BANK OF DETROIT *v.* STANDARD ACCIDENT INSURANCE CO.

1. Forgery—False Assumption of Authority to Indorse Check Does Not Constitute Forgery.

   The indorsement of a check in the name of the payee and adding the indorser's own name, by means of which he obtained the money and converted it to his own use, is not forgery, in the absence of a statute constituting it such, although it is a false and fraudulent assumption of authority, since forgery is the making or altering of a writing so as to make the alteration purport to be the act of another person.

2. Insurance—Insurance Against Forgery—Liability of Insurer.

   An insurance company which issued to a bank a policy covering any loss insured might sustain through forgery is not liable for a loss sustained through a false and fraudulent assumption of authority in indorsing a check in the payee's name, where said indorsement was followed by indorser's own name, since the fraudulent act did not constitute forgery.

3. Forgery—In Absence of Statute Common Law Prevails.

   In the absence of a statute in reference to forgery the common law prevails.

Error to Wayne; Stone (John G.), J., presiding. Submitted October 4, 1928. (Docket No. 45, Calendar No. 33,728.) Decided December 4, 1928.

Assumpsit by the Bank of Detroit against the Standard Accident Insurance Company and another on an indemnity bond. Judgment for defendants. Plaintiff brings error. Affirmed.

*Anderson, Wilcox, Lacy & Lawson (C. J. Huddleston,* of counsel), for appellant.

*Lightner, Oxtoby, Hanley & Crawford,* for appellees.

Potter, J. The Bank of Detroit brought suit against the Standard Accident Insurance Company and the Fidelity & Deposit Company of Maryland. The defendants executed to plaintiff a bond in the amount of $250,000 indemnifying the Bank of Detroit against—

"any loss through the payment, whether received over the counter or through the clearing house or by mail, of forged or raised checks, or (genuine) checks bearing forged indorsements, or the establishment of any credit to any customer on the faith of such checks."

The Strathmoor Lumber, Coal & Supply Company obtained a certified check payable to the order of the American Investment Company in the amount of $1,000. This check was indorsed "American Investment Company, by J. P. Lynch," and deposited to the personal credit of J. P. Lynch, who subsequently withdrew the money from the plaintiff bank. Plaintiff was compelled to refund the $1,000 to the American State Bank, drawee, and, defendants refusing to pay, this suit was instituted to recover the $1,000. There was judgment for defendants and plaintiff brings error. The sole question in the case is whether this indorsement was a forgery or a false and fraudulent assumption of authority.

In *Regina* v. *White,* 2 Car. & Kir. 404, the prisoner was indicted for forging an indorsement on a bill of exchange with intent to defraud. It was signed "Per procuration, Thomas Tomlinson, Emanuel White." Defendant was convicted. The case was afterwards considered by the 15 judges, who held the conviction wrong. Indorsing a bill of exchange under a false assumption of authority to indorse it

"Per procuration" is not forgery, there being no false making.

In the case of *In re Windsor*, 6 Best & S. 522, Windsor was charged with forgery. He was the paying teller of the Mercantile Bank of New York and made false and fraudulent entries upon his books to conceal his crimes and embezzled upwards of $200,000. Chief Justice Cockburn said:

"No doubt this was a false entry, and made for fraudulent purposes; but it is clear that the offense did not amount to forgery. We must take the term 'forgery' in the extradition act to mean that which by universal acceptation it is understood to mean, namely, the making or altering a writing so as to make the writing or alteration purport to be the act of some other person, which it is not."

In *Rex* v. *Arscott*, 6 Car. & P. 408, the defendant was indicted for forging and uttering, knowing it to be forged, an indorsement on a bill of exchange. He indorsed "Received for R. Aickman, G. Arscott." It is said:

"The words are—'Received for R. Aickman, G. Arscott.' I take it, that, to forge a receipt for money, is writing the name of the person for whom it is received. But, in this case, the acts done by the prisoner were, receiving for another person, and signing his own name. Under these circumstances the prisoner must be acquitted upon this indictment."

In *Re Tully*, 20 Fed. 812, the only question presented was whether the offense with which the defendant was charged constituted forgery. He was a submanager of the Preston Banking Company, Limited, and had general authority from the bank to draw checks and he was charged with drawing a check for £1,000 signed per pro. the Preston Bank

Company, G. T. Tully, submanager. He received the money in person and rendered to the accountant's bureau of the bank the slip signed "P," converted the money to his own use, and absconded. It is said:

"If a check delivered in payment of goods purchased be drawn fraudulently against a bank where the drawer has no funds, and has no reason to expect payment, such a check is not forgery, since it binds nobody but the drawer, and is precisely such as he made it and intended it to be; but if the holder fraudulently increase the amount payable after the check has been signed, that is forgery on his part, because the check is evidence and apparent authority for drawing an amount of money which the maker never authorized. In all these cases the distinction seems to me to turn upon the question whether the instrument has, or can be made to have, any legal force or effect, in itself considered, against any other person than him who makes the false statement or alteration. If it has, and is designed and calculated to deceive, it is forgery; otherwise not."

In *State* v. *Willson*, 28 Minn. 52 (9 N. W. 28), defendant was convicted of uttering a false deed knowing the same to be false. The deed purported to be a deed of land by one James D. Hoitt to Joseph F. Miller, signed by H. H. Willson, per procuration of said Hoitt, the form of the signature being "James D. Hoitt, by H. H. Willson, his attorney in fact." Defendant signed the deed claiming the authority to do so under the power of attorney. It is said:

"The real question, therefore, is whether an instrument, which appears on its face to have been executed by an agent authorized, while in truth he was not so, is a false instrument; or, to state the proposition in another form, when an instrument is really, in all its parts, written or signed by the individual by whom it purports to be written and signed, and the falsity consists, not in the simulation or

counterfeiting of the act of another, but in the false assertion which the instrument contains that he, the writer and signer thereof, is authorized so to make and sign it in behalf of another, as it purports to be, is it a *false* instrument, within the meaning of the statute, and, upon negotiation of such instrument by the person who has so prepared it, is that person guilty of uttering a *false* instrument?    *    *    *

"The instrument, on its face, purports to be defendant's own act, but one which he was authorized to do for and in the name of Hoitt. The reader of the deed could not misunderstand it. By its terms, the defendant declares that he made the writing, but that he so made it for Hoitt and by authority from Hoitt. The falsity, if any, consists in the claim of authority from Hoitt. The law, as we have seen, is well settled that if a person sign an instrument with his own name per procuration of the party whom he intends or pretends to represent, it is no forgery, it is no *false making* of the instrument, but merely a false assumption of authority."

In *Barron* v. *State,* 12 Ga. App. 342 (77 S. E. 214), defendant was indicted for forgery. He signed a draft "W. R. Amason, W. H. B." The question was whether or not in signing Amason's name he was guilty of forgery. It is said:

"In our view of the case the defendant may be guilty of cheating and swindling, or of obtaining money under false pretenses, but under the evidence in the record he cannot be convicted of the offense of forgery. There is some conflict in the authorities upon this subject, but the sounder view seems to be that forgery cannot be predicated of a writing which is not in itself false,—is not intended to be a semblance of something other than what it purports to be; and the mere fact that a paper is issued with fraudulent intent is not of itself sufficient to constitute the crime of forgery, if the paper purports to be executed by an agent, although, in truth and in

fact, there may have been no agency at all. The reason is plain; for, in the latter case, the fraud, if perpetrated at all, is effected by inducing confidence in the validity of the agency alleged to exist, whereas in the case of real forgery the fraud is committed by inducing the belief that the paper was executed or signed by him who purported to have signed it, when in truth and in fact such was not the case. In forgery the false instrument must carry on its face the semblance of that for which it is counterfeited, although it is not necessary that the semblance be exact. * * * In our judgment, the true rule is stated in 5 Encyclopedia of Evidence, 860: 'Evidence showing that the defendant did the acts for another, though the authority was falsely and fraudulently assumed, will not sustain a prosecution for forgery.' "

In *Mann* v. *People,* 15 Hun (N. Y.), 155, the prisoner was indicted for making a note for $10,000. It was signed by Henry A. Mann, treasurer. It purported to be drawn in pursuance of a resolution of the board of supervisors of Saratoga county. The court said its legal character was the same as if it had been signed "County of Saratoga, by Henry A. Mann, treasurer." It is said:

"Assuming this to be correct, we first have to inquire whether the making of such an instrument would have been forgery at common law, or without reference to the phraseology of our statute. That is, when one executes an instrument purporting on its face to be executed by him as agent for a principal named therein, and when he has in fact no authority from such principal, is he guilty of forgery? The English cases prior to chap. 28 of 24 and 25 Vict. hold that he is not.

"In *Rex* v. *Arscott,* 6 Car. & P. 408, the prisoner had indorsed on a bill of exchange 'Received for R. Aickman, G. Arscott.' Littledale, J., said: 'To forge a receipt for money is writing the name of the person for whom it is received. But in this case the

acts done by the prisoner were the receiving for another person and signing *"his own* name."' It was held that the offense was not forgery. The leading case of *Regina* v. *White* is reported in 2 Car. & Kir. 404, and much more fully in 2 Coxe C. C., 210. In that case a bill of exchange payable to the order of Thomas Tomlinson was indorsed by the prisoner: 'Per procuration Thomas Tomlinson, Emanuel White.' He had no authority whatever from Tomlinson. It was held by the twelve judges, before whom the case was argued, that this was not a forgery. On the argument of the present case, the counsel for the people urged that the act of White could not have been forgery at common law, because it was the writing merely of a name; citing to that point *Regina* v. *Close,* 7 Coxe C. C., 494. That was a case where, with fraudulent intent, a person had marked .a painting with the name of a celebrated artist; and the court held that the act was not forgery. This was entirely different from the case of an indorsement of a note. In the one, the name, if genuine, has a legal effect and forms a contract. In the other it does not. The counsel for the people also cited 3 Coke, Inst., 169, where Lord Coke, speaking of the words 'or make,' in 5 Eliz. Ch., 14, says: 'These be larger words than to forge, for one may make a false writing within this act, though it be not forged in the name of another, nor his seal nor hand counterfeited.' But the meaning of that language is explained by Lord Coke in the next sentence, where he gives, as an illustration, that if A execute a deed of land in the manor of Dale to B, and if a person erase from the deed the letter D, and insert the letter S in its place, so that the deed shall read lands in the manor of Sale, this will be .a forgery, or a false writing under seal, although it is not forged in the name of another, nor his seal nor hand counterfeited. There is nothing, then, in this passage of Lord Coke which weakens the force of the decision in *Regina* v. *White.* It was in fact .cited by the counsel for the

prisoner in that case. The decision there seems to be on the very point involved in this present case, that an instrument thus made was not a forgery, although its statements were untrue.

"This question came up in this State under the extradition treaty with England. A bill of exchange had been made payable to the order of Charles Macintosh & Co. It was indorsed by the prisoner, Heilbonn, as follows: 'Received for Chas. Macintosh & Co., Alex. Heilbonn, No. 9 Vine street, Regent street, No. 73 Aldermanbury.' The prisoner had no authority to make the indorsement. He was arrested under the provisions of that treaty, and was afterwards brought up on *habeas corpus* and discharged. The court said: 'It is the essence of forgery that one signs the name of another to pass it off as the signature or counterfeit of that other. This cannot be when the party openly and on the face of the paper declares that he signs it for the other.' (*Heilbonn's Case*, 1 Parker Crim. Cas. 429; see, also, 2 Bish. Crim. L., § 582; 2 Wharton Crim. Law, § 1432; 2 Arch. Crim. Pr. and Pl., 819.)

"To the same effect is the case of *Commonwealth* v. *Baldwin,* 11 Gray (Mass.), 197 (71 Am. Dec. 703). The prisoner made and delivered a note signed 'Schouler, Baldwin & Co.,' stating at the same time that he and one Schouler composed the firm. There was no such partnership. It was held not to be a forgery. The court say: 'As a general rule, however, to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it. The mere false statement or implication of a fact not having reference to the person by whom the instrument is executed, will not constitute the crime.'

"So, also, in *State* v. *Young,* 46 N. H. 266 (88 Am. Dec. 212), the court say: 'The term falsely * * * has reference, not to the contents or tenor of the writing, or to the fact stated in the writing, * * * but it implies that the paper or writing is false, not

genuine; fictitious, not a true writing; without regard to the truth or falsehood of the statement it contains.'

"The case of *Commonwealth* v. *Baldwin (ut supra)* is referred to in a recent case in the same State. *Commonwealth* v. *Foster,* 114 Mass. 311 (19 Am. Rep. 353). The court there say:

" 'The distinction is plainly drawn between one who assumes to bind another, either jointly with himself, or by procuration, however groundless and false may be the pretense of authority so to do, and one who signs in such a manner that the instrument may purport to bear the actual signature of another party having the same name.'

"And the court speak of 'the *essential element* of an intent, when making a signature, or procuring it to be made, to pass it off fraudulently *as the signature of another party* than the one who made it.'

"It seems to us that these authorities, in the absence of anything to the contrary, are sufficient to show that, aside from our statute at common law, such an offense is not a forgery."

In *State* v. *Taylor,* 46 La. Ann. 1332 (16 South. 190, 25 L. R. A. 591, 49 Am. St. Rep. 351), defendant E. R. Taylor was indicted for forgery. He signed a note by the names of several parties and added "I was authorized to sign the above names, I secured the order. E. R. Taylor." It is said:

"Assuming that the facts are correctly charged, forgery is not the crime the defendant has committed. Forgery is defined as the making or altering of a writing so as to make the alteration purport to be the act of another person. This definition does not embrace the making of a note per procuration of the party whom he intends to represent. The false assumption of authority is not the forgery denounced by the statute, and falsely assuming to act as agent of the maker of the instrument does not make the alteration purport to be the act of another,

It is his own unauthorized and wrongful act, and not the fraudulently falsifying of another's name, as in forgery. It was not a false making of another's signature. It did not purport to be the signatures of the drawers personally, but their signatures as written by the defendant acting as an agent. He did not personate others, and fraudulently write their names, but stated on the face of the instrument that he was an authorized agent. This did not constitute forgery, though he may have had no authority in fact. The agency expressed takes the instrument out of the category of false making in the sense of forgery."

In *People* v. *Bendit,* 111 Cal. 274 (43 Pac. 901, 31 L. R. A. 831, 52 Am. St. Rep. 186), the defendant was indicted and convicted of forgery, he having signed the instrument with his initials. It is said:

"By these acts he may have committed some other crime, but he did not commit forgery. We have been referred to no authorities to the point that the signing of another's name as his agent is forgery, while there is a multitude of authorities to the contrary in text-books and adjudicated cases. 'If a man accept or indorse a bill of exchange in the name of another, without his authority, it is a forgery. But if he sign it with his own name, per procuration of the party whom he intends to represent, it is no forgery; it is no false making of the instrument, but merely a false assumption of authority.' "

Annexed to this case in 31 L. R. A. 831, is a note which reviews the authorities.

In England, parliament has passed a statute covering questions of this kind. Section 24, chap. 98, 24 & 25 Victoria. There is no such statute here. In the absence of a statute the common law prevails.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.