# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee/Cross-Appellant,

v

MARTI J. SCHRAUBEN,

        Defendant-Appellant/Cross-
        Appellee.

FOR PUBLICATION
January 26, 2016

No. 323170
Ionia Circuit Court
LC No. 2012-015535-FH

Before: MARKEY, P.J., and OWENS and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(concurring in part and dissenting in part)*

I respectfully disagree that defendant is not entitled to a new trial. I believe that the trial court and the majority misconstrue, subtly but with important implications, the gravamen of defendant's theory of the case. I agree that nothing in the record suggests that the prosecutor was aware of the perjury, but I also agree, as the majority implies but does not outright state, that perjured testimony that affects the fairness of the trial entitles a defendant to a new trial irrespective of whether the prosecutor bears any blame. Where I differ from the majority is my conclusion that Lehman's perjury does have practical ramifications to at least some of defendant's convictions and does affect the fairness of defendant's trial. I find, as a consequence, that the trial court did abuse its discretion by denying defendant a new trial. In all other respects, I agree with the majority.

The alleged factual bases for each of the charges at issue are important. Four of defendant's convictions for uttering and publishing, MCL 750.249, were based on four "false, forged, altered, or counterfeit" death certificates filed for people who were still alive at the time; all four of his convictions for forgery, MCL 750.248, were based on the same death certificates. The other four uttering and publishing convictions were based on four checks made payable to defendant's holding corporation with Lehman's signature allegedly forged[1] on the endorsement

---

[1] Of note, "forgery" is a distinct crime that entails making a *document* purport to be something other than what it really is. *People v Hodgins*, 85 Mich App 62, 64-65; 270 NW2d 527 (1978). However, throughout this matter, the word "forged" or "forgery" has also, confusingly, been used in a more colloquial sense to refer to the allegation that defendant placed Lehman's

-1-

line of those checks by defendant. The prosecution's theory of the case was that defendant falsely placed Lehman's signature on the checks to divert funds from Lehman's funeral home to defendant's own use, and he also crafted the false death certificates and again falsely placed Lehman's signature on them as part of a scheme to receive certain insurance payments. Defendant's theory of the case was that Lehman was running an illegal scheme to pay off a debt to defendant and that the signatures purporting to be from Lehman were, in fact, Lehman's actual signature or had been made with Lehman's knowledge and approval.

The majority and the trial court miss the obvious and necessary implication of defendant's theory of the case: it is *critical* to the prosecution's theory of the case that Lehman's purported signatures were not made by Lehman or with Lehman's knowledge and approval. Consequently, defendant's theory of the case *would* in fact completely undercut most of his convictions. It might be of no consequence to defendant's insurance fraud convictions whether Lehman's signatures were genuine, because in those matters the prosecution correctly states that at most Lehman would have been guilty along with defendant. However, it would be of enormous consequence to any matter entailing a signature purporting to be from Lehman that the prosecution contended was actually executed by defendant. Consequently, Lehman's credibility was far more critical than it might superficially appear.[2] Beyond that, I believe that there is a "reasonable likelihood" that if the jury concluded that defendant was not guilty of the uttering and publishing and forgery convictions, it might well conclude that any insurance fraud was actually under Lehman's control, as well.

---

signature on various documents without Lehman's knowledge or approval. Strictly speaking, a fictitious signature on a document is not *per se* the *crime* of "forgery" unless doing so makes *the instrument itself* a lie. *Id.* at 66-67; see also *Bank of Detroit v Standard Accident Ins Co*, 245 Mich 14, 17-23; 222 NW 134 (1928). That being said, a false signature made without authority certainly *can* make a writing a lie and thus constitute forgery. *People v Susalla*, 392 Mich 387, 392-393; 220 NW2d 405 (1974). "The key appears to be that *the writing itself* is a lie." *Id.* (emphasis added). Unfortunately, the phraseology of a false signature made by one person purporting to be that of another as "forged" is deeply embedded in common parlance and makes the discussion more difficult to follow than it might otherwise be.

[2] The majority states that "this does not explain why defendant would direct two clients to write their checks to Schrauben Management." I disagree. If Lehman and defendant were both involved in such a dubious payback scheme, the obvious implication is that defendant would have directed checks to be made out to Schrauben Management because defendant and Lehman had agreed to such occurrences as part of that scheme. While I do not, of course, know if that is actually what happened, the logical significance appears to me quite obvious.

The only possible way Lehman's perjury could be irrelevant and harmless is if this Court were to conclude that defendant's theory of the case was fundamentally hopeless from the outset. In other words, that there was no possible way defendant could have convinced the jury to acquit him.  I am not prepared to draw that conclusion, any more than I am prepared to conclude that defendant will necessarily be successful on retrial.  I therefore find that the trial court abused its discretion by denying defendant a new trial.  I would grant defendant that new trial.


/s/ Amy Ronayne Krause