RONAYNE Krause, J.

(concurring in part and dissenting in part).

I respectfully disagree that defendant is not entitled to a new trial. I believe that the trial court and the majority misconstrue, subtly, but with important implications, the gravamen of defendant’s theory of the case. I agree with the majority that nothing in the record suggests that the prosecution was aware of the perjury, and I believe, as the majority implies but does not outright state, that peijured testimony that affects the fairness of the trial entitles a defendant to a new trial irrespective of whether the prosecution bears any blame. Where I differ from the majority is my conclusion that Lehman’s perjury does have practical ramifications for at least some of defendant’s convictions and does affect the fairness of defendant’s trial. I would hold, as a consequence, that the trial court abused its discretion by denying defendant a new trial. In all other respects, I agree with the majority.
The alleged factual bases for each of the charges at issue are important. Four of defendant’s convictions for uttering and publishing, MCL 750.249, were based on four “false, forged, altered, or counterfeit” death certificates filed for people who were still alive at the time; all four of his convictions for forgery, MCL 750.248, were based on the same death certificates. The other four uttering and publishing convictions were based on *201 four checks made payable to defendant’s holding corporation with Lehman’s signature allegedly forged[1] on the endorsement line of those checks by defendant. The prosecution’s theory of the case was that defendant falsely placed Lehman’s signature on the checks to divert funds from Lehman’s funeral home to defendant’s own use, and that defendant also crafted the false death certificates and again falsely placed Lehman’s signature on them as part of a scheme to receive certain insurance payments. Defendant’s theory of the case was that Lehman was running an illegal scheme to pay off a debt to defendant and that the signatures purporting to be from Lehman were, in fact, Lehman’s actual signature or had been made with Lehman’s knowledge and approval.
The majority and the trial court neglect to observe the obvious and necessary implication of defendant’s theory of the case: it is critical to the prosecution’s theory of the case that Lehman’s purported signatures were not made by Lehman or with Lehman’s knowledge and approval. Consequently, defendant’s theory of *202 the case would in fact completely undercut most of his convictions. It might be of no consequence to defendant’s insurance fraud convictions whether Lehman’s signatures were genuine, because in those matters the prosecution correctly states that at most Lehman would have been guilty along with defendant. However, it would be of enormous consequence to any matter entailing a signature purporting to be from Lehman that the prosecution contended was actually executed by defendant. Consequently, Lehman’s credibility was far more critical than it might superficially appear.[2] Beyond that, I believe that there is a “reasonable likelihood” that if the jury had concluded that defendant was not guilty of the uttering and publishing and forgery charges, it might well have concluded that any insurance fraud was actually under Lehman’s control as well.
The only possible way Lehman’s perjury could be irrelevant and harmless is if this Court were to conclude that defendant’s theory of the case was fundamentally hopeless from the outset. In other words, that there was no possible way defendant could have convinced the jury to acquit him. I am not prepared to draw that conclusion, any more than I am prepared to conclude that defendant will necessarily be successful on retrial. I would therefore hold that the trial court abused its discretion by denying defendant a new trial. I would grant defendant that new trial.

 Of note, “forgery” is a distinct crime that entails making a document purport to be something it is not. People v Hodgins, 85 Mich App 62, 64-65; 270 NW2d 527 (1978). However, throughout this matter, the word “forged” or “forgery” has also, confusingly, been used in a more colloquial sense to refer to the allegation that defendant placed Lehman’s signature on various documents without Lehman’s knowledge or approval. Strictly speaking, a fictitious signature on a document is not per se the crime of “forgery” unless doing so makes the instrument itself a. lie. Id. at 66-67; see also Bank of Detroit v Standard Accident Ins Co, 245 Mich 14, 17-23; 222 NW 134 (1928). That being said, a false signature made without authority certainly can make a writing a lie and thus constitute forgery. People v Susalla, 392 Mich 387, 392-393; 220 NW2d 405 (1974). “The key appears to be that the writing itself is a lie.” Id. (emphasis added). Unfortunately, the phraseology of a false signature made by one person purporting to be that of another as “forged” is deeply embedded in common parlance and makes this discussion more difficult to follow than it might otherwise be.

 The majority states that “this does not explain why defendant would direct two clients to write their checks to Schrauben Management.” I disagree. If Lehman and defendant were both involved in such a dubious payback scheme, the obvious implication is that defendant would have directed checks to be made out to Schrauben Management because defendant and Lehman had agreed to such occurrences as part of that scheme. While I do not, of course, know if that is actually what happened, the logical significance appears to me quite obvious.