## 4285. BARRON v. THE STATE.

1. The indictment was not defective for any of the reasons pointed out in the demurrer.

(a) The charge that the filling in of the blanks and the signing of the name of "W. R. Amason, W. H. B.," was fraudulently done cured the defect due to the omission of the word "fraudulently" before the word "forge," in the beginning of the charge in the indictment.

(b) The accusation fully sets out the contents and location of the interlineations in the alleged forged instrument as completed.

(c) The alleged forged instrument was in effect an order for money, and the amount thereof was stated, but in an indictment under section 245 of the Penal Code it is not necessary to allege that articles described in the forged instrument are of value.

(d) It was not necessary for the indictment to allege what was the connection, if any, between the person whose name was alleged to have been forged and the person defrauded. These extrinsic facts, though requisite to render the writing efficient as the means of consummating a fraud, could be shown by the evidence. *McLean* v. *State*, 3 *Ga. App.* 660 (60 S. E. 332).

(e) In a prosecution for forgery it is not necessary to allege or prove that actual loss resulted from the forgery.

(f) The indictment alleging that the name of a person other than either of the defendants was signed to the instrument alleged· to have been forged, it was not subject to demurrer upon the ground that it failed to charge that the defendants had signed the name of another, for, although it appears from the indictment that the alleged forged paper

was signed by an agent, the indictment does not disclose that the agent referred to was one of the defendants.

(g) An indictment founded on section 236 of the Penal Code must allege that the forged paper was uttered and published as true, but in an indictment founded on section 245 this allegation is not required, for, under the latter section, the crime of uttering consists in publishing or tendering a paper, knowing the writing to be forged.

2. An assignment·of error, to the effect that a certain instruction to the jury, in itself correct, is erroneous because of the court's·failure to charge some additional proposition of law, is without merit. However, the charge of the court in the present case is not subject to the objection made; for an instruction to the effect that the jury must be satisfied that the instrument in question was fraudulently forged is equivalent to an instruction that tney must be satisfied that the writing was made with the intent to defraud.

3. The court did not err in giving in charge to the jury the provisions of section 245 of the Penal Code, the accusation being founded upon that section.

4. In the absence of a request for further instructions, the charge of the court upon the subject of reasonable doubt was sufficiently explicit; and it was not for any reason erroneous.

5. The guilt of the accused not being wholly dependent on circumstantial evidence, it was not error, in the absence of a timely written request, to omit to give in charge to the jury section 1010 of the Penal Code.

6. While it is true that it is not within the power of a trial judge to direct a verdict in a criminal case, there was nothing in the language used by the judge which intimated an opinion as to the guilt of the plaintiff in error, and as he fails to show injury to himself, it does not lie in his mouth to complain of the act of the court as to another defendant. *Montgomery* v. *State*, 10 *Ga. App.* 801 (74 S. E. 285).

7. To constitute forgery, the writing must purport to be the writing of another than the person making it. "The mere false statement or implication of a fact not having reference to the person by whom the instrument is executed will not constitute the crime." Where one executes an instrument purporting on its face to be executed by him as the agent of the principal, he is not guilty of forgery, although he has in fact no authority from such principal to execute the same. This is not the false making of the instrument, but merely a false and fraudulent assumption of authority. The essence of forgery is the making of a false writing, with the intent that it shall be received as the act of another than the party signing it; and where it appears that it could not have been intended that the false writing should be received as other than what it purports to be, the maker may be guilty of cheating and swindling, but can not be guilty of forgery.

DECIDED FEBRUARY 18, 1913.

Indictment for forgery; from Johnson superior court—Judge Hawkins. June 1, 1912.

*J. L. Kent, B. B. Blount, B. H. Moye, William Faircloth, C. S. Claxton, E. L. Stephens,* for plaintiff in error.

*Alfred Herrington, solicitor-general, Hines & Jordan,* contra.

RUSSELL, J. The various grounds of the demurrer, and all of the grounds of the motion for a new trial, save one, are sufficiently dealt with in the first six headnotes, and need no further discussion. But we feel constrained to reverse the judgment refusing a new trial, upon the ground that the court committed error in two respects: (1) in instructing the jury as follows: "If you believe the defendant, Barron, in this case had authority to sign the name of W. R. Amason per W. H. B. to a draft or order, in payment for seed that he actually purchased, he would not be authorized to sign it to a paper of that kind, and procure money, pretending that he had purchased seed, when in fact he had not;" and (2) especially because, under the evidence adduced upon the trial, the defendant could not lawfully be convicted of the offense of forgery. This portion of the charge of the court we deal with in connection with what we shall say in regard to the evidence, for the reason that, while the instruction quoted was applicable to testimony, it was, however, none the less erroneous and injurious to the accused, for one of the reasons stated in the assignment of error, to wit: that the jury would naturally be led to infer that the accused would be guilty of forgery, even if the judge had not intended his language to bear that construction. In our opinion, the jury were not authorized to find, in any view of the case, that the accused was guilty; for he was authorized to write the order. The evidence very plainly discloses that he did not falsely sign a name which he was not authorized to sign, but he signed Mr. Amason's name in the manner in which he was authorized to sign it, and to a paper which he was authorized to execute, although his use of his authority in the present instance may have been false and fraudulent. In our view of the case the defendant may be guilty of cheating and swindling, or of obtaining money under false pretenses, but under the evidence in the record he can not be convicted of the offense of forgery. There is some conflict in the authorities upon this subject, but the sounder view seems to be that forgery can not be predicated of a writing which is not in itself false,—is not intended to be a semblance of something other than what it purports to be; and the mere fact that a paper is issued with fraudulent intent is not of itself sufficient to constitute the crime of forgery, if the paper purports to be executed by an agent, although, in truth and in fact, there may have been no agency at all. The reason is plain; for, in

the latter case, the fraud, if perpetrated at all, is effected by inducing confidence in the validity of the agency alleged to exist, whereas in the case of real forgery the fraud is committed by inducing the belief that the paper was executed or signed by him who purported to have signed it, when in truth and in fact such was not the case. In forgery the false instrument must carry on its face the semblance of that for which it is counterfeited, although it is not necessary that the semblance be exact. 2 Arch. Crim. Practice, 866.

The court did not err in overruling the 6th ground of the demurrer, in which this objection was raised against the indictment; for it did not appear from the indictment that the case was not one of forgery. It was only after the coming in of the evidence that it was manifest from the testimony of the prosecutor himself that the initials "W. H. B.," which appeared in the indictment, referred to the defendant, and also that the defendant was authorized by Mr. Amason to sign his name in the manner in which it was signed to the receipt for cottonseed. When the prosecutor testified that the defendant was authorized to sign his name in the ordinary course of his agency and whenever he bought cottonseed, and it appeared that in the present case the defendant had not signed the name otherwise than as he was authorized to do, the case was not one in which the accused had signed a paper purporting to be something which it was not, but one in which he had signed a paper purporting to be exactly what it was, although the paper may have been signed with a false and fraudulent intent to use it for a different purpose than had been intended by his principal. In *Hale* v. *State,* 120 *Ga.* 183 (47 S. E. 531), the Supreme Court held that "The essence of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party signing it." In that case a judgment of conviction was affirmed, because, though the check alleged to have been forged was signed "J. A. Grier," there was sufficient evidence to prove that it was the intent of the accused to forge the name of "J. A. Greer." It was only a case of misspelling, and the evidence was sufficient to show the defendant's intent that the signing of the check should be taken as the act of some other person than himself. In the present case, however, the prosecutor himself testified that Barron was employed by him to buy cottonseed and weigh the same, and to sign the

tickets in payment for them just as those are signed which are the basis of the present prosecution. "I instructed him to sign the same and to have a signature for his own name. 'W. H. B.' is what he adopted for his own signature." It appears also, from the testimony of Miss Harris, to whom the seed ticket was presented, that she was the bookkeeper at the store where these tickets were paid off, that she was familiar with the signature as signed by Barron, and knew that he had the right to sign the tickets, and she had the authority to pay the tickets signed in that manner. The case is one in which it appears (even viewing the State's testimony in its strongest light) that Barron made or issued a ticket for cottonseed which he had not bought or weighed, and which, according to the testimony of the prosecutor, he was, therefore, not authorized to issue. But in the making of the seed ticket he signed the name of Amason just as he was authorized to do in bona fide transactions, and just as the party to whom the ticket was intended to be presented knew Amason had authorized these tickets to be signed. If, as was held in the *Hale* case, supra, the essence of forgery is the making of a false writing, with the intent that it shall be received as the act of another than the party signing it, then Barron was not proved to be guilty of the offense of forgery; for it is clear, from the evidence, that the writing, though it may have been false and fraudulent, was intended by Barron to be received as the signature of Amason, signed by himself as procurator.

At common law there were many embarrassing questions as to what kinds of writings were forgeries; but as to what constitutes forgery of those instruments which may be the subject of forgery the definitions at common law and in our code are the same. "Forgery, at common law, is the false making or material altering, with intent to defraud, of any writing which, if genuine, might be of legal efficacy or the foundation of a legal liability." 2 Bishop's Crim. Law (8th ed.), § 523. From the notes to this section of Bishop, it is plain that the leading descriptive words are "false making." Section 245 of the Penal Code, under which the accused was indicted, declares that, "If any person shall fraudulently make, sign, forge, counterfeit, or alter, or be concerned in the fraudulent making, signing, forging, counterfeiting or altering of any other writing not herein provided for, or shall fraudulently utter, publish, pass, or tender the same, knowing the said writing

to be forged, or counterfeited, or falsely and fraudulently altered, with intent to defraud any person, firm, or corporation, or shall fraudulently cause or procure the same to be done," he shall be punished as prescribed. The code section does not attempt to define precisely the word "forge;" and for that reason the proper meaning of the term, as applicable to a case like that at bar, must be ascertained by reference to the construction given and the scope attached to the term in decisions based on the common law and similar statutes by other courts of high authority in this country.

The statement of Judge Westbrook in Mann v. People, 15 Hun (N. Y.), 166, that "forgery is the attempted imitation of another's personal act, and by means of such imitation to cheat and defraud; and not the doing of something in the name of another which does not profess to be the other's personal act, but that of the doer thereof, who claims and insists, by and in the act itself, that he is authorized to obligate the individual whom he is assuming to obligate, precisely as he undertakes to do," is well sustained by the English courts. 2 Russell on Crimes (9th Am. ed.), 946, 947; 2 Cox's Crim. Cases, 210; Rex v. Storey, Russell & Ryan, 81; Rex v. Arscott, 6 Car. & Payne, 408; 2 Bishop's Crim. Law (7th ed.), § 582; Connor's case, 3 City Hall Recorder, 59; Heilbonn's case, 1 Parker's Crim. R. 429. In Mann v. People, to which we have just referred, the court said: "The ordinary and popular meaning of the word 'forge' must not be forgotten. When a note or instrument is spoken of as 'forged,' it is understood to be a counterfeit one, and this understanding is in conformity with the definition given to the two words by our best lexicographers. . . Whenever, therefore, the expression 'forged note,' or 'counterfeit note,' is used, we understand the speaker to refer to an instrument by which some one has undertaken to utter and pass, as the genuine and personal act of another, something which he has himself prepared in the similitude and likeness of the other's act, and, by such similitude and likeness which he has endeavored to impress upon the spurious instrument, to deceive and defraud." In Commonwealth v. Baldwin, 11 Gray, 197 (71 Am. D. 703), Baldwin was convicted of the offense of forgery in the false making and forging of a promissory note. According to the evidence, the note was signed "Schouler, Baldwin & Co.," and the defendant wrote the signature, representing himself to be a member of the alleged part-

nership, which he said was composed of himself and William Schouler, of Columbus; and he said that no person was represented by the words "& Co." The prosecution proved that there had never been a partnership between Schouler and the defendant, or if a partnership had ever existed, that it had been dissolved prior to the signing of the note. In announcing the opinion of the court, Thomas, J., said: "It would be difficult perhaps by a single definition of the crime of forgery to include all possible cases. Forgery, speaking in general terms, is the false making or material alteration of or addition to a written instrument for the purpose of deceit and fraud. It may be the making of a false writing purporting to be that of another. It may be the alteration in some material particular of a genuine instrument by a change of its words or figures. It may be the addition of some material provision to an instrument otherwise genuine. It may be the appending of a genuine signature of another to an instrument for which it was not intended. The false writing, alleged to have been made, may purport to be the instrument of a person or firm existing, or of a fictitious person or firm. It may be even in the name of the prisoner, if it purports to be, and is desired to be received as the instrument of a third person having the same name. [See *Barfield* v. *State*, 29 *Ga.* 127, 74 Am. Dec. 49, for a similar ruling on this point.] As a general rule, however, to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it. The mere false statement or implication of a fact not having reference to the person by whom the instrument is executed will not constitute the crime."

In the leading case of Regina *v.* White, 1 Denison, 208, 2 Cox C. C. 210, 2 Carr & Kirwan, 404, the prisoner indorsed a bill of exchange "per procuration Thomas Tomlinson, Emanuel White." He had no authority to make the indorsement, but the twelve judges unanimously held that the act was no forgery. In that case Pollock, C. B., said: "It purports to be the name of a party, written by his authority, and it is his name written within that authority." Willmore (for the prisoner): "Rather it purports to be the writing of the prisoner, and it is so." And this was the final holding of the court. In Regina *v.* Rogers, 8 Car. & P. 629, the indictment was for uttering a forged acceptance of a bill of exchange. It was signed and delivered by the defendant as the

acceptance of Nicholson & Co. There was some evidence that it was accepted by one T. Nicholson, in the name of a fictitious firm, but, the jury having found that the acceptance was not written by T. Nicholson, the case went no further. In State v. Young, 46 N. H. 266 (88 Am. Dec. 212), the court said: "The term falsely . . . has reference, not to the contents or tenor of the writing, or to the fact stated in the writing, . . but it implies that the paper or writing is false, not genuine; fictitious, not a true writing; without regard to the truth or falsehood of the statement it contains."

In State v. Wilson, 28 Minn. 52 (9 N. W. 28), in which the accused executed a false paper which purported, on its face, to be executed by him as the agent of a named principal, the court held that a conviction for forgery could not be sustained. In ruling upon the case Mitchell, J., said: "Where one executes an instrument purporting on its face to be executed by him as the agent of a principal therein named, when, in fact, he has no authority from such principal to execute the same, he is not guilty of forgery. The instrument is not a false or fraudulent deed within the meaning of the statute. This is not false making of the instrument, but merely the false assumption of authority. Therefore, when such an instrument is uttered by a party who thus signs it under the false assumption of authority, he is not guilty of uttering a false deed, within the meaning of the statute cited." In State v. Taylor, 46 La. Ann. 1332 (16 South. 190, 25 L. R. A. 591, 49 Am. St. R. 35), it was held that where the instrument purported on its face to have been executed by an authorized agent, the defendant—an apparent agent—was not guilty of forgery, though he had no authority in fact; and the court ruled that the agency expressed took the instrument out of the category of false making in the sense of forgery.

While there have been holdings apparently to the contrary in some jurisdictions, the view here announced is supported by rulings of the Supreme Courts of California, Iowa, Missouri, North Carolina, and Ohio, in addition to those already cited from Massachusetts, New York, Minnesota, Louisiana, and New Hampshire, and the English courts. See People v. Bendit, 111 Cal. 43 (43 Pac. 901, 31 L. R. A. 831, 52 Am. St. R. 186); State v. Davis, 53 Iowa, 252 (5 N. W. 149); State v. Milner, 131 Mo. 432 (33

S. W. 15); State *v.* Thornbury, 38 N. C. 79 (44 Am. Dec. 67); Kegg *v.* State, 10 Ohio, 175. In our judgment, the true rule is stated in 5 Encyclopedia of Evidence, 860: "Evidence showing that the defendant did the acts for another, though the authority was falsely and fraudulently assumed, will not sustain a prosecution for forgery." For this reason, in our opinion, the learned trial judge erred in refusing the motion for a new trial.

*Judgment reversed.*