**In re Judy Michelle FOSTER, Debtor.**

**Judy Michelle Foster, Movant,**

v.

**Homeward Residential Inc. on behalf of U.S. Bank National Association as Trustee for TBW Mortgage Backed Trust Series 2006–5, Mortgage Pass through Certificates Series 2006–5, Respondent.**

**No. 12–74591–MGD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 24, 2013.

estoppel decision will be in the Cobb Superior Court. *See Burnes*, 291 F.3d at 1282.

198

Latrice L. Latin, The Latin Law Group, LLC, Roswell, GA, for Debtor.

## ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIM, IN PART, AND DISALLOWING $1,744.20 OF THE CLAIM

MARY GRACE DIEHL, Bankruptcy Judge.

Debtor's objection to claim filed by Homeward Residential Inc. came on for an evidentiary hearing on April 22, 2013. (Docket No. 21). Prior to the hearing, the claim at issue was transferred to Ocwen Loan Servicing, LLC ("Ocwen"). (Docket No. 38). Latrice Latin appeared at the hearing on behalf of Debtor. Celeste Cornell represented Ocwen. K. Edward Safir appeared as counsel to the Chapter 13 Trustee, Mary Ida Townson. The Court heard testimony and argument from the parties. Debtor's Exhibits B, C, D and F were admitted without objection. Ocwen's Exhibits 1–3, 6 and 8 were also admitted into evidence without objection. The Court sustained Debtor's objection to Ocwen's Exhibit 9, and it was not admitted into evidence. Judicial notice was taken as to the proof of claim, Debtor's schedules, and proposed chapter 13 plan. Debtor Judy Foster and Nichelle Jones, senior loan analyst in the law department for Ocwen, testified as witnesses

Debtor's objection has two bases. Debtor objects to the claim on the basis of a payment dispute. Debtor also asserts a legal argument that the claim should be disallowed because U.S. Bank National Association, as Trustee, for whom Ocwen now services the loan, is not the proper holder of the security deed under Georgia Law, O.C.G.A. § 14–5–7.

At the close of the hearing, the Court made an oral ruling that $1,744.20 of the claim representing escrow arrears will be disallowed. Debtor's legal argument was taken under advisement. For the reasons set forth below, the remaining objection is **OVERRULED**. Additionally, Debtor's confirmation hearing is rescheduled as ordered below.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court has subject matter jurisdiction and venue is proper.

### Findings of Fact

Debtor resides in the property that secures the claim at issue. The secured claim of U.S. Bank, N.A., as Trustee for TBW Mortgage–Backed Trust Series 2006–5, Mortgage Pass–Through Certificates, Series 2006–5 ("US Bank") is currently serviced by Ocwen. The total claim amount is $154,614.27 with $16,266.53 in arrears. The loan servicing was transferred from Homeward Residential, Inc. to Ocwen in March 2013, and Homeward Residential, Inc. filed the proof of claim.

Debtor's main contention regarding the disputed arrearage portion of the claim is that she entered into a mortgage modification with American Home Mortgage Servicing Inc. ("AMHSI"), as prior servicer. Debtor did not present any documentary evidence regarding the modification.

Nichelle Jones, senior loan analyst in the law department for Ocwen, testified about the difference in loan servicing software used by Homeward and Ocwen, and stated that she reviewed the computer files, including the "image files" from Homeward, on this loan in advance of the hearing.

Ms. Jones noted on cross examination that her review of the file included looking at the comments section of the loan history that is not included on Exhibit 8. Ms. Jones stated that nothing in the Ocwen comment log indicated that the mortgage had been modified. Ms. Jones also testified that at the time of the servicing transfer Homeward did not notify Ocwen of a modification or proposed modification.

Debtor testified that she has escrowed over $7,700, representing the purported modified monthly mortgage payments of $815.00, since she discovered there was a payment dispute with the mortgage company. Three money orders were admitted into evidence, each in the amount of $815.00, dated May 25, 2012, June 25, 2012, and July 25, 2012. The money orders were signed by Debtor and represented intended payments on her modified first mortgage. The May money order was made payable to AHMSI, and the June and July money orders were made payable to Homeward Residential.

Exhibit 8 is an automated loan payment history generated by Ocwen based on Homeward Residential's records. The date range is from November 2009 to November 2012. The payment history shows a regular payment history through April 2011. The loan payment history documents how Debtor's payments were applied, listing a transaction date, payment due date, and an effective date, which was described as the date the payment was received. Debtor began paying $815 per month in late August 2011, after a three-month period of non-payment. Exhibit 8 shows how the August 2011 $815 payment was partially applied to the May 2011 payment owing. Exhibit 8 also reflects that Debtor had made eight payments in the amount of $815 from August 29, 2011 to July 31, 2012. Ms. Jones explained how these $815.00 payments were applied as partial payments to the scheduled loan payments.

Debtor testified that she pays her insurance and property taxes directly and not through her mortgage. Exhibit's 8 loan payment history includes a line item for an escrow advance on October 29, 2011, followed by another line item showing repayment of such escrow advance on November 20, 2011. No corresponding dollar amounts appear on the loan history document for these escrow entries, and Ms. Jones could not provide such amounts. Ms. Jones explained that amounts were not known from her personal knowledge of the account and not available on the payment loan history that was admitted into evidence. The proof of claim shows an escrow shortage or deficiency in the amount of $1,744.20 that is included in the arrearage figure on the proof of claim. Ms. Jones testified that the repayment of escrow advance would likely be based on double payment, yet this action occurred when the loan was serviced by Homeward. The escrow repayment entry occurred at a date after the proof of claim was filed.

Debtor's legal argument regarding the defect in the chain of title includes two assignments of the security deed. On January 22, 2007, there was an assignment from Buckhead Mortgage Associates, Inc. to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Taylor, Bean & Whitaker Mortgage Corp., which was recorded on February 6, 2007 in the Henry Court records. (Ocwen's Exhibit 2). The assignment was signed by Susan Loveday–Honea, Buckhead Mortgage Associates, Inc.'s attorney-in-fact in the presence of two witnesses and before a notary. The notary's attestation on the face of the assignment includes that "Susan Loveday–Honea, who is personally known to me to be the Attorney–In–Fact, of the Corporation named herein; who,

being duly sworn by me, did state that said instrument was signed on behalf of said corporation pursuant to its by-laws or a resolution of its Board of Directors and that they acknowledge said instrument to be the free act and deed of said corporation."

The second assignment was from MERS to U.S. Bank National Association, as Trustee for TBW Mortgage–Backed Trust Series 2006–5, Mortgage Pass–Through Certificates, Series 2006–5. It was executed on August 22, 2011 and recorded on August 29, 2011 (Ocwen's Exhibit 3). This Assignment was signed by two Assistant Secretaries for MERS. This Assignment also included an unofficial witness and notary seal and signature.

Homeward Residential, Inc., as servicer, filed the proof of claim, naming U.S. Bank National Association, as Trustee for TBW Mortgage–Backed Trust Series 2006–5, Mortgage Pass–Through Certificates, Series 2006–5 as creditor. The claim was later transferred to Ocwen Loan Servicing, LLC, as servicer for U.S. National Bank Association, as Trustee. (Docket No. 38).

Debtor's schedules, motion to strip the junior lien, and proposed chapter 13 plan indicate that Debtor contests the identity of the first mortgage holder and its secured status. Debtor's Schedule D lists Homeward Residential's debt as contingent. Debtor's Schedule D was later amended to include Buckhead Mortgage Assoc. Inc., and the description stated that it was Debtor's original mortgage lender. (Docket No. 20). Debtor's original and amended Schedule F lists American Home Mortgage's debt as disputed.

Debtor also filed a motion to determine the secured status of the junior lien on this property that was granted December ·12, 2012. (Docket Nos. 14 & 25). Debtor's motion to determine secured status of the junior lien included the following description, "Buckhead Mortgage Associates, Inc. was listed as the original (Lender) on Debtor's initial security deed in the amount of $150,550.00. The security instrument was dated August 08, 2006, filed and recorded in the Superior Court of Henry County, GA, Deed Book 9491, Pages 210–230. Deed was *allegedly* assigned to Homeward Residential Inc., which in turn claims to hold the secured interest in the amount of $154,614.27. Homeward Residential Inc. filed a proof of claim October 31, 2012, (Claim No. 2)." (Docket No. 14, emphasis in original). The identity of the senior mortgage holder was not a material fact in granting Debtor's motion and the Order granting the motion makes no finding as to the identity of the holder of the senior security deed.

Additionally, Debtor's proposed chapter 13 plan refers to Fieldstone Mortgage Co., the original lender and holder of the security deed on Debtor's property.[1] Debtor's proposed chapter 13 plan includes the following provision in the miscellaneous section:

(G) Fieldstone Mortgage Co., was listed as the original (Lender) on Debtor's initial security deed; security instrument dated June 21, 2004. The deed was filed and recorded in the Superior Court of Henry County, GA, Deed Book 7386, Pages 192–212, MIN 10005263480290222. Debtor disputes the ASSIGMENT [sic] OF SECURITY DEED to American Home Mortgage Servicing, Inc as the standing first lien

---

1. Based on Debtor's testimony and Buckhead Mortgage Associates, Inc.'s note, Debtor refinanced the property through Buckhead Mortgage Associates, Inc. in 2006. (Debtor's Exhibit B). Debtor does not dispute the validity of the note or security deed in Buckhead's favor.

holder and prepared to object to any proof of claims filed by creditor and/or its authorized agents and counsel. Debtor has already provided sufficient notice within the schedules to American Home Mortgage Servicing, Inc. Debtor's counsel will prepare and mail a R.E.S.P.A. Qualified Written Request, via first class and certified mail.

(Docket No. 12).

Debtor's proposed chapter 13 plan treats this property in the section entitled, "Claims Secured by Real Property Which Debtor Intends to Retain." This provision states that "Debtor will deposit all post-petition mortgage payments directly into an interest bearing account every month until the secured status of the FIRST mortgage lender is hereby determined by the court (See provisions G and H)." (Docket No. 18).[2] Buckhead Mortgage Associates, Inc. is listed as a creditor in this section and the estimated pre-petition arrearage is $0. Mr. Safir reported that Debtor's plan payments were current at the time of the hearing. Debtor's proposed monthly plan payments are $150.00.

### Conclusions of Law

Section 502 of the Bankruptcy Code governs the allowance of claims in a bankruptcy case. Under § 502(a), a proof of claim that is filed under § 501 of the Bankruptcy Code is deemed allowed, unless a party in interest objects. The Bankruptcy Code permits a creditor to file a proof of claim either executed by the creditor, or by the creditor's authorized agent. 11 U.S.C. § 501(a); FED. R. BANKR.P. 3001(b). Section 502(b) provides that if an objection to a claim is made, the court shall, after notice and a hearing, determine the amount of the claim, and shall allow such claim in such amount except to the extent that one of the grounds for disallowance of the claim under § 502(b) apply. Although Debtor's objection does not specify the statutory basis for her objection, the Court construes the substance of the Debtor's objection as a § 502(b)(1) objection. Section 502(b)(1) states that the court shall disallow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."

During the claims allowance process, the burden of proof shifts between the parties. Initially, a creditor bears the burden of establishing its claim. *See* FED. R. BANKR.P. 3001(f). If a claim is based on a writing, a copy of the writing is to be filed along with the proof of claim. FED. R. BANKR.P. 3001(c). Once a creditor properly executes and files a proof of claim in accordance with the Federal Rules of Bankruptcy Procedure, its proof of claim is considered "prima facie evidence of the validity and amount of the claim." FED. R. BANKR.P. 3001(f); *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993).

If a party objects to the claim, the objecting party carries the burden of going forward with evidence to overcome the prima facie validity and amount of the claim. *Juniper Dev. Group v. Kahn,* 993 F.2d 915, 925 (1st Cir.1993). If the objecting party produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of persuasion shifts back to the claimant. *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992); *In re Britt,* 199 B.R. 1000,

---

**2.** Miscellaneous Section H of Debtor's proposed plan states:

(H) For the purpose of proving this plan as feasible and the filing of this case in good faith, Debtor shall deposit all post petition mortgage payments into an interest bearing account once per month beginning November, 2012, until the secured status of the FIRST mortgage lender has been determined by the court.

1008 (Bankr.N.D.Ala.1996). Although Rule 3001(f) places the burden of going forward on the objecting party, the burden of ultimate persuasion rests with the claimant. *Matter of Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988).

Here, Debtor's mere testimony regarding the loan modification with AHMSI without documentary evidence is not sufficient to disrupt the *prima facie* validity of the proof of claim. Debtor asserts that the pattern of $815.00 payments offers sufficient evidence of a modified agreement. Yet under the Georgia Statute of Frauds, oral and unwritten agreements regarding interests in lands, including reinstatement or a refinancing of a mortgage, are unenforceable. O.C.G.A. § 13-5-30; *Allen v. Tucker Fed. Bank,* 236 Ga.App. 245, 510 S.E.2d 546, 547 (1998) (applying O.C.G.A. § 13-5-30(7) to agreement to reinstate or refinance mortgage). Furthermore, "[w]hen a contract is required by the Statute of Frauds to be in writing, any modification of the contract must also be in writing." *Walden v. Smith,* 249 Ga.App. 32, 546 S.E.2d 808, 810 (2001). Without producing any writing to evidence the mortgage modification that Debtor claims to have entered into, Debtor has failed to meet her burden of going forward to overcome the *prima facie* validity of the terms included in the Buckhead Mortgage note accompanying the proof of claim.

With respect to the particular amounts of the arrearage portion of the claim, the evidence presented by Debtor and Ocwen successfully rebutted the $1,744.20 escrow arrearage line item included in the proof of claim. Ocwen failed to establish that the escrow advance on the proof of claim is an obligation enforceable against Debtor. Based on Debtor's credible testimony of paying her taxes and home insurance directly and Ms. Jones'

explanation of the probable escrow refund, the $1,744.20 escrow line item on the proof of claim is disallowed.

Debtor also objects to the proof of claim on a legal basis, asserting that O.C.G.A. § 14-5-7 requires a corporate seal to effectuate a corporate transfer or assignment of a mortgage, security deed, or deed of trust. Debtor seeks to disallow the claim in full under this theory.

Yet, the existence of a first mortgage and senior security deed can not be in dispute. Debtor is judicially estopped from asserting that there is no senior deed to secure debt on the property securing this claim. Debtor availed herself of the existence of a senior deed to secure debt when the Court granted Debtor's motion and voided CitiBank, N.A.'s junior deed to secure debt at discharge (and treated any claim filed by CitiBank, N.A. as unsecured) pursuant to 11 U.S.C. § 506 (Docket No. 25).

When a party assumes a certain position in a legal proceeding and convinces the Court to accept that position, that party may not thereafter assume a contrary position. *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Debtor cannot use the existence of a senior deed to secured debt to her benefit, and, then, challenge the secured nature of such claim in the same proceeding. But for the senior secured claim exceeding the value of Debtor's property, Debtor would not have been entitled to void Citibank's junior lien under § 506. Judicial estoppel is an equitable doctrine that protects the integrity of the judicial process. *Id.* Therefore, Debtor's legal argument is limited to whether Ocwen, as servicer to U.S. Bank, has an enforceable claim under applicable Georgia law. The secured status of such claim can not be in dispute.

Debtor does not dispute the original note refinancing her mortgage with Buckhead Mortgage. She disputes the validity of the subsequent assignments. The first assignment from Buckhead Mortgage to MERS was executed on January 22, 2007 (Ocwen's Exhibit 2). The assignment was executed on behalf of Buckhead Mortgage by Susan Loveday–Honea, as attorney-in-fact. Susan Loveday–Honea's name and position (attorney-in-fact) appeared on the signatory line. The face of the assignment includes the following attestation clause from the notary public:

On this 22nd day of January, 2007 before me, a Notary in and for the State and County aforementioned, personally appeared Susan Loveday–Honea, who is personally known to me to be the Attorney–In–Fact, of the Corporation named herein; who, being duly sworn by me, did state that said instrument was signed on behalf of said corporation pursuant to its by-laws or a resolution of its Board of Directors and that they acknowledge said instrument to be the free act and deed of said corporation.

Ocwen's Exhibit 2.

Debtor asserts that the assignment from Buckhead Mortgage to MERS is invalid under Georgia law, and, therefore, there is a defect in the chain of title and the claim now held and serviced by Ocwen should be disallowed. The Court disagrees.

As a distinct matter, Debtor's ability to assert a defect in the chain of title under these facts and circumstances is questionable. Some courts in this circuit have determined that an obligor does not have standing to challenge the validity of the assignment of a security deed between two corporate entities. *Rosenhaft v. BAC Home Loans Servicing, LP,* 2012 WL 484842 (N.D.Ga. Feb. 14, 2012) (Thrash, D.J.); *Woodberry v. Bank of America, N.A.,* 2012 WL 113658 (N.D.Ga. Jan. 12, 2012) (Thrash, D.J.). Courts reason that since the obligor is not a party to the assignment transaction, then such litigant lacks standing to challenge the assignment. *E.g., Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC,* 399 Fed.Appx. 97, 102 (6th Cir.2010).

Relevant contrary authority exits as to the obligor's ability to assert an ineffective transfer. In *Sutton v. Bank of America,* the district court was unpersuaded to preclude a debtor's ability to challenge an assignment. 2012 WL 2394533 (N.D.Ga. Apr. 11, 2012) (Pannell, D.J.). This determination was made in a proceeding with claims brought for wrongful foreclosure and a violation of the Georgia Fair Business Practice Act, along with attendant damages.

Here, the context is notably different. Debtor challenges the assignment of the security deed as a chapter 13 debtor wishing to reorganize her consumer debts, including retaining her home for which this claim relates. No other party has asserted a claim based on Debtor's obligation. Debtor admits to making mortgage payments to the servicers preceding Ocwen, Homeward Residential and AHMSI. Further, Debtor has conceded that a senior security deed exists on this property, based on her motion to void Citibank's junior lien. Within this setting, limiting a Debtor's ability to challenge the validity of the assignments where she is not a party to the transfer may be appropriate, yet there are substantive reasons to overrule Debtor's objection as well.

Regarding the substance of Debtor's arguments, she first suggests that any transfer of a corporate deed to secure debt requires a corporate seal to effectuate such transfer. Debtor relies on O.C.G.A. § 14–5–7 for this proposition. There are two versions of this statute that

are implicated based on the dates of the assignments. The first assignment from Buckhead Mortgage to MERS was executed on January 22, 2007. The 2007 version of the statute states in relevant part:

§ 14–5–7. Execution of instruments conveying interest in real property; presumption of authority of executing officers; exceptions (a) Instruments executed by a corporation conveying an interest in real property, when signed by the president or vice-president and attested or countersigned by the secretary or an assistant secretary or the cashier or assistant cashier of the corporation, shall be conclusive evidence that the president or vice-president of the corporation executing the document does in fact occupy the official position indicated; that the signature of such officer subscribed thereto is genuine; and that the execution of the document on behalf of the corporation has been duly authorized. Any corporation may by proper resolution authorize the execution of such instruments by other officers of the corporation.

O.C.G.A. § 14–5–7 (effective to June 30, 2011). Absent clear congressional intent for the statute to operate retroactively, the statute in effect at the time of the transaction or occurrence controls. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). ▪ Unlike the current version of the statute, this prior version lacks explicit

language that a corporate seal is not required for a conclusively valid corporate conveyance.[3] Yet, the applicable Georgia law still reveals that a corporate seal is not a requirement for a valid corporate assignment of deed. The Georgia statute on corporate seals provides that "[t]he seal of the corporation may be affixed to any document executed by the corporation, but the absence of the seal shall not impair the validity of the document or of any action taken in pursuance thereof or in reliance thereon." O.C.G.A. § 14–2–151. The presence of a corporate seal merely provides a presumption of an authorized corporate act. *See Hartkopf v. Heinrich Ad. Berkemann*, 200 Ga.App. 355, 408 S.E.2d 450 (1991); O.C.G.A. § 10–6–2.[4]

The execution of a deed by a corporation involves the rules of agency as well as the law of corporations generally. 2 PINDAR's GA. REAL ESTATE LAW & PROCEDURE § 19:45 (7th ed.). Corporate assignments must comply with the all the requirements of real property assignments,[5] yet because a corporation is an artificial form and can only act through its agents, § 14–5–7 identifies certain forms of transfers or assignments that benefit from "conclusive evidence" that the individual agents executing such transfer are duly authorized to act on behalf of the corporation, and; therefore conclusively bind the corporation. *See* O.C.G.A. § 10–6–2 (explaining corporate agency and acts that bind the corporation).

---

**3.** The statute effective July 1, 2011, which was tendered to the Court at the hearing and presumably relied upon by Debtor for both assignments, explicitly notes that signatures by certain officers or other corporate action fulfill the requirements for a conclusively valid corporate transfer "notwithstanding the lack of a corporate seal." O.C.G.A. § 14–5–7(a) & (b) (2011).

**4.** "A corporation may create an agent in its usual mode of transacting business and with-

out its corporate seal...." O.C.G.A. § 10–6–2.

**5.** *E.g.*, O.C.G.A. § 44–5–30 ("A deed to lands must be in writing, signed by the maker, and attested by at least two witnesses."); O.C.G.A. § 44–2–21(a)(4), (b) (one of two required attesting witnesses may be a notary public); O.C.G.A. § 44–14–33 (requirements to admit mortgage to record).

When the corporate deed to secure debt takes the prescribed form, then § 14–5–7 operates to provide conclusive evidence of a valid, authorized corporate act. *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga.App. 307, 309, 704 S.E.2d 823, 827 (2010).

Although the Court disagrees with Debtor's contention that there is a defective chain of title, it is true, however, that the assignment from Buckhead Mortgage to MERS does not satisfy the applicable statutory directions regarding the identified signers and cosigners. What Debtor seems to overlook, however, is the attestation by the notary on the face of the security deed that refers to the corporate authority granted to Susan Loveday–Honea, in her capacity as attorney-in-fact of the corporation, to execute this corporate act of assignment.

The last sentence of the applicable version of § 14–5–7 reads, "Any corporation may by proper resolution authorize the execution of such instruments by other officers of the corporation." The evidentiary record provides that Ms. Loveday–Honea was a known attorney-in-fact for Buckhead Mortgage, as attested to by the notary. There is no question that Ms. Loveday–Honea was acting on behalf of Buckhead Mortgage based on the form of the assignment. The assignment includes Buckhead Mortgage as the grantor, assignor, and transferor. Ms. Loveday–Honea's signature and signature line is preceded with "By," and follows "Buckhead Mortgage Associates, Inc." The face of the assignment includes a known agent of the corporation acting within her scope and on behalf of the corporation, which under agency law would bind the corporation without an allegation of an unauthorized act, forgery, or otherwise.

Debtor does not satisfy her burden of presenting evidence to go forward. Nothing in the record suggests that the assignment was unauthorized or otherwise invalid. Based on the applicable agency law and in the absence of evidence to the contrary, the notary attestation on the face of the assignment satisfies the Court that Ms. Loveday–Honea was authorized to act and bind Buckhead Mortgage upon execution of the assignment. This concept is supported by a leading Georgia real estate treatise:

> The deed should be executed in the name of the corporation by its duly authorized officers or agent or by an attorney in fact. The authority of such officers or agents may be granted by the corporation in its usual mode of transacting business without a formal power of attorney and even without the corporate seal.

2 PINDAR'S GA. REAL ESTATE LAW & PROCEDURE § 19:45 (7th ed.)

The second assignment from MERS to U.S. Bank also complies with applicable Georgia law. (Ocwen's Exhibit 3). The assignment was executed August 22, 2011, and at the time of the assignment, § 14–5–7(b) provides in relevant part that:

> Instruments executed by a corporation releasing or transferring a deed to secure debt, mortgage, or other security agreement, when signed by the president, vice-president, secretary, or assistant secretary of the corporation shall, notwithstanding the lack of a corporate seal, be conclusive evidence that the officer of the corporation executing the instrument does in fact occupy the official position indicated, that the signature of such officer subscribed thereto is genuine, and that the execution of the instrument on behalf of the corporation has been duly authorized.

O.C.G.A. § 14–5–7(b)(2011). This assignment is signed by two assistant secretaries on MERS behalf. There is an unofficial

witness and notary signature with seal. Debtor made no specific arguments regarding its defects beyond the absence of a corporate seal, which is explicitly addressed by the statute. This second assignment to U.S. Bank, as Trustee, fits the formality requirements to deem it a conclusively valid, authorized assignment by MERS.

The facts and circumstances of this case are also distinguishable from the case Debtor relies—*Matter of Pope and Lord, Inc.*, 721 F.2d 1321 (11th Cir.1983). In *Pope and Lord*, the Eleventh Circuit affirmed declaratory judgment in favor of the trustee for the corporate debtor. The corporate debtor's pre-petition conveyance to Knight State Bank of corporate property was determined to be invalid and the Bank's claim was treated as unsecured. *Id.* at 1323. The instrument had multiple defects. The name of the corporate debtor on the security deed did not include the corporate "Inc." designation. *Id.* at 1322. The signatories on the deed were not designated as corporate officers, they merely signed as individuals without any indication that they were acting outside their individual capacity. *Id.* at 1323. The signatories, which were found to be the president and vice-president at the time of the transfer, did not satisfy the corporate resolution that required execution by the president and secretary-treasurer. *Id.* Here, there is no question as to whether these assignments were made by corporate entities. Debtor merely asserts that the formalities which statutorily provide conclusive evidence of a corporate act are not satisfied. Yet, the assignments and evidentiary record do not indicate any underlying basis for an ineffective assignment.

Even instruments that lack conclusive authority on the face of the deed do not make the deed invalid. In *R.W. Holdco, Inc. v. SCI/RW Holdco, Inc.*, the vice presidents' signatures on the warranty deeds were not attested or countersigned by another officer, yet that did not preclude finding that conveyances of land were presumptively valid under statute. 250 Ga. App. 414, 418, 551 S.E.2d 825, 829 (2001). The Georgia Supreme Court in *Hacienda Corp. v. White*, held that the lack of corporate seal and attestation, however, is not conclusive evidence that the corporate officer executing a deed lacks corporate authority to do so. 260 Ga. 879, 880, 400 S.E.2d 323, 325 (1991) (applying the prior version of O.C.G.A. § 14–5–7 and relying on outside evidence on corporate signor's authority to execute the deed on behalf of the corporation). Both of the above cited cases involve an action by an asserted bona fide purchaser, and the question before the Court was whether a deed lacking the conclusively valid form creates a duty to inquire, and, therefore destroy the "without notice" required element of a bona fide purchaser.

The instrument itself also provides authority for assignments, sales, and changes to the loan services. Paragraph 20 of the deed to secure debt allows for the sale of the note without prior notice to borrower and changes to the loan servicer. (Ocwen's Exhibit 1). Additionally, it is recognized that "[a] servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer." *E.g., In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y.2010).

Based upon the record and the facts and circumstances of this case, Ocwen's claim is disallowed in the amount of $1,744.20. The remainder of its claim is allowed. Accordingly, it is

**ORDERED** that Debtor's objection to claim number 2 is sustained as to $1,744.20 of the arrears and overruled as to the remainder of the claim.

**IT IS FURTHER ORDERED AND NOTICE IS HEREBY GIVEN** that a confirmation hearing before the undersigned will be held on **July 31, 2013 at 9:30 a.m.** in Room 1201, United States Courthouse, 75 Spring Street, S.W., Atlanta, GA 30303.